UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

COLEENA M. KONKLE,

    Plaintiff,

v.                                        CASE NO. 6:16-cv-104-Orl-MCR

ACTING COMMISSIONER OF THE
SOCIAL SECURITY ADMINISTRATION,

    Defendant.
_____/

## MEMORANDUM OPINION AND ORDER[1]

**THIS CAUSE** is before the Court on Plaintiff's appeal of an administrative decision denying her application for a period of disability and disability insurance benefits ("DIB"), alleging disability beginning August 20, 2010. (Tr. 179.) A hearing was held before the assigned Administrative Law Judge ("ALJ") on April 22, 2014, at which Plaintiff was represented by counsel. (Tr. 31-54.) The ALJ found Plaintiff not disabled from August 20, 2010 through March 31, 2014, the date last insured.[2] (Tr. 11-25.)

In reaching the decision, the ALJ found that Plaintiff "had the following severe impairments: Crohn's disease, endocervicitis and dysthymic disorder." (Tr. 14.) The ALJ also found that Plaintiff had the residual functional capacity

---

[1] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. (Docs. 13, 16.)

[2] Plaintiff had to establish disability on or before her date last insured in order to be entitled to a period of disability and DIB. (Tr. 11.)

("RFC") to perform "less than the full exertional range of sedentary work."  (Tr. 16.)  After finding that Plaintiff was unable to perform any past relevant work, the ALJ found that there were jobs existing in significant numbers in the national economy that Plaintiff could perform.  (Tr. 23-24.)

Plaintiff is appealing the Commissioner's decision that she was not disabled from August 20, 2010 through March 31, 2014.  Plaintiff has exhausted her available administrative remedies and the case is properly before the Court.  The Court has reviewed the record, the briefs, and the applicable law.  For the reasons stated herein, the Commissioner's decision is **AFFIRMED**.

I.     Standard

The scope of this Court's review is limited to determining whether the Commissioner applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the Commissioner's findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971).  "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004).  Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.  *Edwards v. Sullivan*, 937

F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995); *accord Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (stating the court must scrutinize the entire record to determine the reasonableness of the Commissioner's factual findings).

## II. Discussion

### A. Issues on Appeal

Plaintiff raises two arguments on appeal. Her first argument is that the ALJ did not provide sufficient rationale based on substantial evidence for according little weight to the March 28, 2013 opinion of Hassan Borghei, D.O., Plaintiff's treating gastroenterologist. Plaintiff asserts that the ALJ's RFC assessment, which provides for unscheduled breaks lasting five minutes as often as every two hours, conflicts with Plaintiff's testimony and with Dr. Borghei's opinion that frequent trips to the bathroom are to be expected due to her Crohn's disease.[3] Plaintiff points out that the ALJ did not state the weight given to Dr. Borghei's opinion that frequent trips to the bathroom are to be expected. Further, although

---

[3] Plaintiff testified at the hearing that she must go to the bathroom anywhere from four to twelve times a day, that the need to go is urgent and without much warning, that she has had accidents, that she needs from two to ten minutes each time, and that her abdominal cramping is sharp, occurs daily, and comes and goes. (Tr. 39-40.) Plaintiff asserts that Dr. Borghei's opinion and the latest research on Crohn's disease confirm that the limitations supported by her testimony are reasonable.

3

the ALJ gave some weight to Dr. Borghei's opinion that Plaintiff may miss school/work days, Plaintiff argues that the ALJ completely ignored this opinion because his RFC assessment does not include any anticipated absences from work due to flare-ups of Crohn's disease. Plaintiff contends that "Dr. Borghei was sufficiently specific for this reviewing court to find that the ALJ did not give the doctor's opinion sufficient weight." (Doc. 20 at 12.)

Plaintiff's second argument is that the ALJ improperly relied on the testimony of the Vocational Expert ("VE") because his hypothetical question did not adequately reflect all of Plaintiff's limitations. Plaintiff asserts that the ALJ's hypothetical question, which included unscheduled breaks lasting five minutes as often as every two hours, did not describe a true need for unscheduled breaks and was not consistent with Dr. Borghei's opinion and Plaintiff's testimony. Plaintiff points to the VE's response that *if* the need to take five-minute breaks could be included within the 15- or 30-minute scheduled breaks, then there would be no issue, which begs the question what if the need to take breaks is truly unscheduled and cannot be included in the 15- or 30-minute scheduled breaks. Plaintiff argues that the ALJ's failure to ask this hypothetical question is not harmless error. Plaintiff also argues that the ALJ failed to include in the hypothetical question his own finding that Plaintiff had moderate difficulties in concentration, persistence or pace because he failed to ask how occasional difficulties with concentration, attention, and task persistence would affect the job

base. Plaintiff urges the Court to remand this case "as it cannot be determined that the few restrictions listed in the RFC finding fully account for the acknowledged deficiencies in concentration, persistence, or pace." (Doc. 20 at 18.)

### B. The ALJ's Decision

The ALJ found that Plaintiff had the RFC "to perform less than the full exertional range of sedentary work." (Tr. 16.) Specifically:

> The claimant can lift, carry, push and/or pull ten (10) pounds occasionally. The claimant can stand and/or walk for two (2) hours in an eight-hour workday with normal breaks. The claimant can sit for up to six (6) hours in an eight-hour workday with normal breaks. The claimant can occasionally stoop, kneel, crouch, crawl and climb stairs. However, she should never climb ladders or scaffolds. The claimant's work would be limited to simple, routine and repetitive tasks. Her work would further be limited to low stress work, meaning that the claimant could not perform jobs with strict time frames in which tasks must be completed. The claimant would need unscheduled breaks during an eight-hour workday as often as five minutes every two hours.

(*Id.*) In making this finding, the ALJ considered Plaintiff's subjective complaints, her mother's statements in the Third Party Function Report, Plaintiff's treatment records, including the progress notes and opinions of Dr. Borghei, the opinions of the consultative examiners, and the opinions of the State agency non-examining consultants. (Tr. 17-23.)

The ALJ addressed Plaintiff's complaints as follows:

> The claimant, a thirty-four year old former photo technician, alleges disability due to limitations imposed by Crohn's disease,

5

> endocervicitis and dysthymic disorder. The claimant alleges she needs to use the bathroom four to twelve times [a] day [which] coupled with cramping, prevents her from working full time. The claimant disclosed she has had accidents regarding the frequency of needing to use the bathroom. The claimant stated that she experiences cramping daily and curtails the pain using heating pads and bathing in Epsom salts. She described her cramping as sharp pains in her abdomen that are connected to her bowel movements (*See* Exhibits 9E and 17E). The claimant explained she has to watch her diet and consumes yoghurt protein shakes. When going out, the claimant stated that she must take anti-diarrhea medicine.

(Tr. 17.) The ALJ found, for the reasons explained in his decision, that although Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, Plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely credible. (Tr. 21.)

With respect to Dr. Borghei's treatment records and opinions, the ALJ stated in relevant part:

> The medical records indicate the claimant has been treated for Crohn's disease with gastroenterologist Hassan Borghei D.O., for a lengthy duration. On October 12, 2010, Dr. Borghei noted the claimant stopped taking her prescribed medication and instead admitted she was only using over the counter Motrin to address her abdominal pains for weeks. The claimant complained of nausea, bloody bowel movements and bloating on October 26, 2010, however, examination of the gastrointestinal system was normal. The claimant underwent an esophagogastroduodenoscopy on October 28, 2010, which showed benign duodenal mucosa; mild chronic gastritis; and no pathologic changes. The August 30, 2012 visit indicated right lower quadrant tenderness in the abdomen but bowel sounds were normal (Exhibit 1F).
>
> After lab work was performed, including a biopsy, the claimant was

> diagnosed on November 7, 2012 with granulation tissue with fibrinopurulent debris identified, consistent with ulceration; portions of reactive colonic type mucosa showing changes of colitis; and focal active colitis with focal superficial erosions. On November 26, 2012, the gastrointestinal system was again normal and Dr. Borghei instructed the claimant to taper down steroids (Exhibit 4F)[.]
>
> The records further note that on February 6, 2013, the claimant was referred treatment [sic] for a history of ringworm. The claimant requested a letter on April 29, 2013 from Dr. Borghei concluding that she was unable to work for forty hours a week and that she was applying for financial aid to go to school, working part time only. Dr. Borghei noted he was unsure why the claimant could not work full time (Exhibit 9F).
>
> Instead, Dr. Borghei sent correspondence for bathroom privileges and the claimant's Pell grant application, dated May 28, 2013, affirming the claimant has been treated for Crohn's disease and frequent trips to the bathroom are to be expected. Dr. Borghei also noted the claimant may miss school and work days. On January 6, 2014, it was noted the claimant was treated for ringworm and due to the infection, Dr. Borghei was unable to start Cimzia for the Crohn's disease. Despite complaints of abdominal pain and rectal bleeding, the physical examination indicated a non-tender abdomen with normal bowel sounds (Exhibit 9F). Dr. Borghei also referred the claimant to infectious disease specialist Saima Abbas, M.D., to treat the claimant's ringworm (Exhibit 12F).

(Tr. 17-18.) The ALJ gave "only some weight" to Dr. Borghei's opinion that Plaintiff may miss school and work days. (Tr. 22.) The ALJ explained: "Although[] the opinion is somewhat consistent with his own progress notes indicating issues with Crohn's disease, Dr. Borghei was not specific on how many actual days the claimant would miss. Furthermore, Dr. Borghei's opinion did not appear to take into account the claimant's part-time work during the time." (*Id.*)

As to the RFC assessment, the ALJ explained:

7

In terms of the claimant's alleged physical impairments, treatment records, findings on physical examination, and imaging reports are consistent with the above [RFC] assessment.

The claimant presented symptomatic conditions that allegedly affect the claimant's potential to perform work, including frequent use of the bathroom. However, the medical records, including the results of diagnostic examinations do not support the allegations.

. . .

The physical examinations from Brevard Health [A]lliance did not indicate remarkable issues in with [sic] the abdomen or the overall gastrointestinal system (Exhibit 14F). Furthermore, the records of treating gastroenterologist Dr. Borghei documented many normal examinations, including the most recent examination dated November 26, 2012 (Exhibit 1F and 4F). The records further illustrated many times, the claimant was self-sufficient, including the ability to drive herself. The claimant even testified that she drives to Lakeland, Florida to see her children regularly.

Lastly, there has been no documentation by any physician indicating the claimant needed to use the bathroom a certain number of times. There has also been no documentation that the claimant's part-time employment was terminated due to this. In any case, I have taken this into account with the determined [RFC].

. . .

It is also curious to me that the claimant requested a letter from Dr. Borghei concluding that she was unable to work for forty hours a week and that she was applying for financial aid to go to school, working part time only (Exhibit 9F). Considering, as discussed above, the claimant was able to work with her symptoms and is now applying to school, which implies the claimant's reported activities of daily living have been under reported. This does not support the claimant's allegations that she is totally disabled. In fact, Dr. Borghei noted he was unsure why the claimant could not work full time (Exhibit 9F). This slightly erodes the credibility of the claimant and simultaneously, suggests the claimant's symptoms are not as severe as claimed.

(Tr. 19-20.)

The ALJ also observed that Plaintiff was non-compliant with prescribed treatment. (Tr. 21.) As reflected in an October 12, 2010 progress note from Dr. Borghei, Plaintiff stopped taking her prescribed medication and only used over the counter Motrin for abdominal pain. (*Id.*) Also, despite referral from Dr. Borghei, Plaintiff failed to show up for her appointment with an infectious disease physician on January 22, 2013. (*Id.*) The ALJ stated: "These factors further imply the claimant's symptoms are not as severe since it is reasonable to assume the claimant would follow through on her treating gastroenterologist's advice." (*Id.*)

### C. Analysis

Plaintiff argues that the ALJ erred in failing to state the weight given to Dr. Borghei's opinion that frequent trips to the bathroom are to be expected and in giving only some weight to Dr. Borghei's opinion that Plaintiff may miss school and work days, that the ALJ completely ignored the latter opinion because his RFC does not include any anticipated absences due to flare-ups of Crohn's disease, and that the ALJ's RFC assessment conflicts with Dr. Borghei's opinion, Plaintiff's testimony, and the latest research on Crohn's disease, all of which allegedly support greater limitations than found by the ALJ. The Court finds no error.

First, the ALJ properly considered and weighed Dr. Borghei's opinions. On

9

April 29, 2013, Plaintiff called Dr. Borghei's office asking for "a letter that she can not work 40 hours a week, [was] applying for financial aid to go to school, [and could] do part time but not full time" work.  (Tr. 441.)  When Dr. Borghei received this message, he asked, "why can not she wor[k] full time?" (*Id.*)  On May 28, 2013, Dr. Borghei signed a letter, stating in relevant part:

> [Plaintiff] has been seen in our office and treated for the following diagnos[i]s: Crohn's Disease.  Crohn's Disease is a chronic [i]nflammatory bowel disease which causes abdominal pain and diarrhea.  Therefore[,] frequent trips to the bathroom are to be expected and also [a] patient with [C]rohn's disease will have flare ups with abdominal pain and may miss school/work days.

(Tr. 440.)

The ALJ addressed this letter in his decision, but ultimately decided to give Dr. Borghei's opinion that Plaintiff may miss school/work days "only some weight." (Tr. 18, 22.)  The ALJ explained: "Although[] the opinion is somewhat consistent with his own progress notes indicating issues with Crohn's disease, Dr. Borghei was not specific on how many actual days the claimant would miss.  Furthermore, Dr. Borghei's opinion did not appear to take into account the claimant's part-time work during the time." (Tr. 22.)  Although the ALJ did not separately weigh Dr. Borghei's opinion that frequent trips to the bathroom are to be expected, the ALJ considered all of Dr. Borghei's opinions.  (*See* Tr. 17-18, 22.)  The ALJ stated that although Plaintiff "presented symptomatic conditions that allegedly affect [her] potential to perform work, including frequent use of the

bathroom . . . , the medical records, including the results of diagnostic examinations do not support the allegations." (Tr. 19.) The ALJ then discussed specific medical records showing unremarkable physical examinations and noted that Plaintiff's daily activities have been under-reported given that she was apparently self-sufficient, was able to work part-time and drive, and was applying to school. (*Id.*) The ALJ also noted that although "there has been no documentation by any physician indicating the claimant needed to use the bathroom a certain number of times" or that Plaintiff's "part-time employment was terminated due to this,"[4] he has nevertheless "taken this into account" when determining the RFC. (*Id.*)

The Court finds that the ALJ's reasons for giving only some weight to Dr. Borghei's opinions are supported by substantial evidence. (*See, e.g.*, Tr. 349 (noting normal esophagogastroduodenoscopy, status post random biopsies of duodenum, gastric, and gastroesophageal junction); Tr. 363 (noting normal gastrointestinal examination); Tr. 36 & 47-48 (testimony by Plaintiff that she lives by herself and drives to Lakeland to visit her children).) Plaintiff seems to argue that the ALJ should have given more weight to Dr. Borghei's opinions given that they were "somewhat consistent with his own progress notes indicating issues with Crohn's disease." (Tr. 22.) However, the ALJ noted that "the records of

---

[4] Although Plaintiff testified that she was fired from her job due to frequent bathroom trips (Tr. 38), the record includes reports that she was terminated for fighting with other employees (Tr. 210, 272, 297).

treating gastroenterologist Dr. Borghei documented many normal examinations, including the most recent examination dated November 26, 2012." (Tr. 19.) The ALJ also noted that Dr. Borghei's October 12, 2010 progress note indicated that Plaintiff "stopped taking her prescribed medication and instead admitted she was only using over the counter Motrin to address her abdominal pains for weeks." (Tr. 17.)

The ALJ's findings are supported by substantial evidence. To the extent Plaintiff invites the Court to re-weigh the evidence or substitute its decision for that of the ALJ, the Court cannot do so. As long as the ALJ's findings are based on correct legal standards and are supported by substantial evidence, the Commissioner's decision must be affirmed even if the reviewer would have reached a different conclusion. Plaintiff contends that the ALJ erred in failing to include any anticipated absences due to flare-ups of Crohn's disease in the RFC assessment. However, the ALJ was not required to include limitations in the RFC or the hypothetical questions, which the ALJ had properly discounted. Moreover, the ALJ's RFC assessment did not need to mirror or match the findings or opinions of any particular medical source because the responsibility for assessing the RFC rests with the ALJ. *Kopke v. Astrue*, 2012 WL 4903470, *5 (M.D. Fla. Sept. 26, 2012) (report and recommendation adopted by 2012 WL 4867423 (M.D. Fla. Oct. 15, 2012)). Moreover, considering that Dr. Borghei's opinions are somewhat vague, Plaintiff does not show what additional limitations would be

warranted that have not been included in the RFC assessment.[5]

Plaintiff argues that, in addition to Dr. Borghei's opinion, Plaintiff's own testimony and the latest research on Crohn's disease support greater limitations than found by the ALJ.  However, as Plaintiff acknowledges, "Crohn's disease symptoms range from mild to severe.  They may vary over time and from person to person, depending on what part of the gastrointestinal (GI) tract is inflamed."  (Doc. 20 at 10 n.1.)  As such, there is no "one size fits all" that an ALJ may be able to glean from the latest research on Crohn's disease.  Instead, what the ALJ was expected to do was to consider the entire record, taking into account Plaintiff's individual symptoms and limitations, in formulating the RFC.

As the ALJ did that here, he found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely credible.  (Tr. 21.)  The ALJ provided explicit and adequate reasons for his credibility determination.  For example, the ALJ stated that "the medical records, including the results of diagnostic examinations[,] do not support [Plaintiff's] allegations."  (Tr. 19.)  The ALJ noted that on multiple occasions, Plaintiff's physical examinations did not reveal abdominal or gastrointestinal issues.  (Tr.

---

[5] Plaintiff also appears to argue that the ALJ erred in giving greater weight to the opinion of a State agency non-examining physician.  However, Plaintiff does not identify this non-examining physician either by name or citation to the record.  Assuming that Plaintiff refers to either Dr. Hernandez or Dr. Meyer, whose opinions the ALJ gave substantial weight, these non-examining psychological consultants rendered opinions only with respect to Plaintiff's mental impairment.  Plaintiff does not explain how their opinions have any bearing on the ALJ's consideration of Dr. Borghei's opinions.

18-19.) The ALJ also noted that despite complaints of abdominal pain and rectal bleeding, Plaintiff's physical examination on January 6, 2014 indicated a non-tender abdomen with normal bowel sounds. (Tr. 18.) In addition, the ALJ stated:

> It is also curious to me that the claimant requested a letter from Dr. Borghei concluding that she was unable to work for forty hours a week and that she was applying for financial aid to go to school, working part time only (Exhibit 9F). Considering, as discussed above, the claimant was able to work with her symptoms and is now applying to school, which implies the claimant's reported activities of daily living have been under reported. This does not support the claimant's allegations that she is totally disabled. In fact, Dr. Borghei noted he was unsure why the claimant could not work full time (Exhibit 9F). This slightly erodes the credibility of the claimant and simultaneously, suggests the claimant's symptoms are not as severe as claimed.

(Tr. 20.) The ALJ added:

> There [are] documented instances of non-compliant behavior during treatment. On October 12, 2010, Dr. Borghei noted the claimant stopped taking her prescribed medication and instead admitted she was only using over the counter Motrin to address her abdominal pains for weeks (Exhibit 1F). Despite referral from Dr. Borghei, it was also documented the claimant failed to show for her appointment on January 22, 2013 with an infectious disease physician (Exhibit 12F/5 and 13). These factors further imply the claimant's symptoms are not as severe since it is reasonable to assume the claimant would follow through on her treating gastroenterologist's advice.

(Tr. 21.)

As shown above, the ALJ provided adequate reasons for his credibility determination. Moreover, these reasons are supported by substantial evidence. (*See, e.g.*, Tr. 337 (noting that as of October 12, 2010, Plaintiff had no abdominal

14

pain, she was taking her medication only once a day after stopping it for two weeks, and had been taking Motrin for abdominal pain for weeks; Plaintiff was also prescribed Prednisone, which she did not take, as of August 30, 2012); Tr. 444 (noting a referral for a consult for history of ringworm) & 481 (noting no show on January 22, 2013); Tr. 183 (earnings of $1,798.56 and $2,612.83 for 2010 and 2011, respectively, indicating part-time employment); Tr. 37-38, 192, & 218 (listing Plaintiff's employment history).)

Because the Court finds that the ALJ's credibility determination and RFC assessment are supported by substantial evidence, Plaintiff's argument that the ALJ improperly relied on the testimony of the VE because his hypothetical question allegedly failed to adequately reflect all of Plaintiff's limitations, also fails. The ALJ was not required to include in the hypothetical question any limitations or opinions that he properly rejected. *See Crawford*, 363 F.3d at 1161 (stating that the ALJ is not required to include findings in the hypothetical question that the ALJ has properly rejected as unsupported by the record). Thus, to the extent Plaintiff argues that the hypothetical question was inconsistent with Dr. Borghei's opinions and Plaintiff's testimony, the ALJ was not required to include opinions or statements that he had properly rejected.

Plaintiff also argues that the ALJ erred when he did not ask the VE whether there could be an issue with Plaintiff's employment if the need to take breaks is truly unscheduled and cannot be included in the 15- or 30-minute scheduled

breaks. Plaintiff does not explain why her counsel did not seek clarification on this issue during the administrative hearing or soon after the hearing when the record remained open. Nevertheless, the VE testified that there is typically a break every two hours, *i.e.*, a morning break, a lunch break, and an afternoon break. (Tr. 50.) The ALJ determined that Plaintiff would need a break every two hours, not every hour as stated in hypothetical question number three. (Tr. 51.) To the extent Plaintiff argues that she needs more frequent breaks based on Dr. Borghei's opinions or her own subjective complaints, the ALJ found that these opinions and statements are not supported by the record, and his finding is supported by substantial evidence.

Plaintiff further argues that the ALJ failed to include in the hypothetical question his own finding that Plaintiff had moderate difficulties in concentration, persistence, or pace because he failed to ask how occasional difficulties with concentration, attention, and task persistence would affect the job base. This argument also lacks merit. In *Winschel v. Commissioner of Social Security*, 631 F.3d 1176 (11th Cir. 2011), the Eleventh Circuit held that moderate limitations in concentration, persistence, and pace must be considered in assessing a claimant's RFC. *Id.* at 1180-81. However, the court also held that if the medical evidence demonstrates that the claimant "can engage in simple, routine tasks or unskilled work despite limitations in concentration, persistence, and pace," the ALJ properly accounts for these limitations if he includes unskilled work in his

16

hypothetical questions and RFC assessment. *Id.* at 1180.

    Here, as part of his evaluation of Plaintiff's mental impairments, the ALJ assessed moderate limitations in Plaintiff's concentration, persistence, or pace (Tr. 15), and then found that Plaintiff had the RFC to perform a reduced range of sedentary work, limited to, *inter alia*, "simple, routine and repetitive tasks" and "low stress work, meaning that the claimant could not perform jobs with strict time frames in which tasks must be completed" (Tr. 16).[6] There was substantial medical evidence on which the ALJ relied to support his finding that Plaintiff could perform "simple, routine and repetitive tasks" and "low stress work," despite her moderate limitations in concentration, persistence, or pace. For instance, on December 3, 2012, consultative psychologist Pasqua Marongiu, Psy.D., P.A., observed, *inter alia*, that Plaintiff's ability to pay attention and concentrate was normal. (Tr. 20, 22, 419.) Also, on December 11, 2012, the State agency psychological consultant Heather J. Hernandez, Ph.D., assessed mild difficulties in maintaining concentration, persistence, or pace, and referenced other records showing normal attention and concentration. (Tr. 21, 60.) In addition, a progress note from Brevard Health Alliance dated April 15, 2013, indicated that Plaintiff

---

[6] The hypothetical questions included a limitation to "simple, routine, and repetitive tasks and . . . to low-stress work." (Tr. 49-52.) In response to the questions, the VE provided a representative sample of unskilled sedentary jobs. (*Id.*)

was alert, with normal attention span and concentration. (Tr. 20, 509.)[7]

Therefore, the ALJ's finding that Plaintiff could perform simple, routine, and repetitive tasks and low stress work is supported by substantial evidence. Based on the foregoing, the Commissioner's decision is due to be affirmed.

Accordingly, it is **ORDERED**:

1. The Commissioner's decision is **AFFIRMED**.

2. The Clerk of Court is directed to enter judgment consistent with this Order and close the file.

**DONE AND ORDERED** at Jacksonville, Florida, on March 21, 2017.

_____
MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:

Counsel of Record

---

[7] Although Plaintiff testified at the hearing that it was hard for her to concentrate due to her medication (Tr. 39), at other times she denied concentration issues (Tr. 72, 75).